UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MARINA BÜHLER-MIKO and COVENTRY ASSET MANAGERS, LLC,<br><br>Defendants. | Civil Action No. 12-cv-00795 (CKK) |

**ORDER OF JUDGMENT BY DEFAULT FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER ANCILLARY RELIEF AGAINST DEFENDANT COVENTRY ASSET MANANGERS, LLC**

This matter is before the Court on Plaintiff U.S. Commodity Futures Trading Commission's ("Commission" or "CFTC") Motion for Entry of Judgment by Default Against Coventry Asset Managers, LLC ("Motion for Default Judgment") pursuant to Federal Rule of Civil Procedure 55(b)(2). For the reasons stated below and good cause having been shown, the Commission's Motion for Default Judgment is GRANTED.

**I.    PROCEDURAL HISTORY**

On May 16, 2012, the Commission filed its Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties (Complaint, ECF No. 1) against Defendants Marina Bühler-Miko ("Bühler-Miko") and Coventry Asset Managers, LLC ("Coventry") (collectively, "Defendants"). The Complaint alleged that, from at least June 18, 2008 through April 30, 2011 ("relevant period"), Defendants fraudulently solicited members of the general public to participate in a pooled investment vehicle through which they could trade in off-exchange

1

agreements, contracts or transactions in foreign currency ("forex") on a leveraged or margined basis. Specifically, the Complaint alleged violations of Sections 4b(a)(2)(A) and (C) of the Commodity Exchange Act ("Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XII (the CFTC Reauthorization Act of 2008 ("CRA")) §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), 7 U.S.C. §§ 6b(a)(2)(A) and (C) (2012). As a result of these violations, the Complaint sought, *inter alia*, injunctive relief, and civil monetary penalties ("CMP"), among other things.

The Commission served Coventry with the Summons and Complaint on July 2, 2012, and filed its Proof of Service for Coventry on August 2, 2012 (ECF No. 7). Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i), Coventry's answer was due on or before August 31, 2012. Coventry failed to answer by the required date. On October 3, 2012, the Commission filed its Request for the Clerk's Entry of Default against Coventry pursuant to Federal Rule of Civil Procedure 55(a) (ECF No. 15). The Clerk of the Court entered default against Coventry on October 4, 2012 (ECF No. 16).[1] To date, Coventry has failed to obtain counsel, enter an appearance or otherwise defend this action.

The Court has considered carefully the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Memorandum in support of the Commission's Motion for Default Judgment and supporting declaration, and, being fully advised and familiar with the record in this matter, hereby enters findings of fact and conclusions of law, and issues a final

---

[1] Defendant Marina Bühler-Miko is not in default in this action.

order of permanent injunction that also provides for a civil monetary penalty and ancillary relief against Coventry pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein.

## II.   FINDINGS OF FACT

### A.   Parties

Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the responsibility for administering and enforcing the Act, as amended, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2012).

Defendant **Coventry Asset Managers, LLC** was a Delaware limited liability company. Its principal place of business was in Washington, the District of Columbia. Coventry Asset Managers, LLC was an asset management company. Coventry Asset Managers, LLC was not a financial institution, registered broker dealer, insurance company, financial holding company, or investing bank holding company, or an associated entity of such entities. Coventry Asset Managers, LLC has never been registered with the Commission in any capacity.

Defendant **Marina Bühler-Miko** is a U.S. citizen who resides in Washington, the District of Columbia, from where she operated Coventry Asset Managers, LLC. Throughout the relevant period, Bühler-Miko was the Executive Manager of Coventry Asset Managers, LLC. She was in charge of handling the day-to-day operations of Coventry Asset Managers, LLC. Bühler-Miko has never been registered with the Commission in any capacity.

### B.   Coventry's Fraudulent Conduct

From at least June 18, 2008 through April 30, 2011, Coventry, by and through Bühler-Miko, fraudulently solicited members of the general public for the purpose of trading off-exchange forex contracts on a leveraged or margined basis through a pooled investment vehicle

known as the Coventry Eire Forex Fund. During the relevant period, the Defendants defrauded customers of at least three-hundred thousand dollars ($300,000).

Coventry, through Bühler-Miko, solicited actual and prospective customers of the Defendants' Coventry Eire Forex Fund by making the following misrepresentations of material facts, among others: (1) guaranteeing actual and prospective customers who entered into a thirteen-month "Asset Management Agreement" trading agreement "profits" of six percent every three months plus a bonus payment at the end of the thirteen-month term by offering to use customer funds to trade off-exchange, leveraged forex via the Coventry Eire Forex Fund; and (2) falsely representing that there was little, if any risk of customers losing their principal by trading in off-exchange leveraged forex contracts through the Coventry Eire Forex Fund.

As a result of the Defendants' fraudulent solicitations, during the relevant period three customers provided at least $300,000 to the Defendants for the purpose of trading forex through the Coventry Eire Forex Fund. During the relevant period, approximately $11,320 was paid to two of the customers as purported quarterly earnings. The third customer never received any funds, including the return of his principal or any guaranteed interest or bonus payments.

At all times during the relevant period, Bühler-Miko was the agent of Coventry and acted within the scope of her employment. She conducted the day-to-day business of Coventry, including conducting its forex trading operation and was the Executive Director. In these roles, Bühler-Miko was acting as an agent of Coventry within the scope of her employment when she fraudulently solicited customers by making false or misleading representations.

### III.   CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 55(b)(2) provides that judgment by default may be entered by a district court against a defendant upon the failure of that defendant to plead or

otherwise defend. *See, e.g., CFTC v. GIGFX, LLC*, 844 F. Supp. 2d 58, 62-63 (D.D.C. 2012) (granting default judgment against defendant who failed to respond to complaint or motion for default judgment); *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 160-61 (D.D.C. 2009) (granting default judgment against defendant who failed to respond to complaint or motion for entry of default judgment); *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (default judgment is available when the adversary process has been halted because of an unresponsive party) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). The grant or denial of a motion for default judgment lies within the sound discretion of the trial court. *Teamsters Local 639-Employers Health Trust v. Boiler and Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 107 (D.D.C. 2008); *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Further, upon default the well-pled factual allegations of the complaint, except those relating to unspecified damages, will be taken as true and liability is established by the entry of default. *CFTC v. GIGFX, LLC*, 844 F. Supp. 2d at 63; *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d at 161; *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 1992). Moreover, "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944). In order to fix the amount, the court may conduct a hearing. Fed. R. Civ. P. 55(b). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damaged specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

The Clerk of the Court already has entered default against Coventry (ECF No. 16). As such, in accordance with Federal Rule of Civil Procedure 55(b)(2), the allegations in the Complaint against Coventry will be taken as true and a final judgment by default is hereby entered against Coventry.

## A.   Jurisdiction and Venue

The Court has jurisdiction over the conduct and transactions at issue in this case pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and Section 2(c)(2) of the Act, 7 U.S.C. § 2(c)(2) (2012). Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the Commission to seek injunctive relief in district court against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), in that Coventry transacted business in the District of Columbia and the acts and practices in violation of the Act occurred within this District, among other places.

## B.   The Commodity Exchange Act

In analyzing the Commission's Motion for Entry of Default Judgment, the Court is mindful that a crucial purpose of the Act is "protecting the innocent individual investor — who may know little about the intricacies and complexities of the commodities market — from being misled or deceived." *CFTC v. R.J. Fitzgerald & Co., Inc.*, 310 F. 3d 1321, 1329 (11th Cir. 2002). "[*C*]*aveat emptor* has no place in the realm of federal commodities fraud. Congress, the CFTC, and the Judiciary have determined that customers must be zealously protected from deceptive statements by brokers who deal in these highly complex and inherently risky financial instruments." *Id.* at 1334.

6

C.     **Coventry Violated Sections 4b(a)(2)(A) and (C) of the Act**

Sections 4b(a)(2)(A) and (C) of the Act make it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person – "(A) to cheat or defraud or attempt to cheat or defraud the other person;" or "(C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, . . . with the other person."

To establish that a defendant violated Sections 4b(a)(2)(A) and (C) of the Act, through misrepresentations, the Commission must prove that: (1) a misrepresentation was made; (2) with scienter; and (3) that the misrepresentation was material. *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002); *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 447 (D.N.J. 2000) (finding fraud where defendant represented that he would open a trading account and then did not do so); *see CFTC v. Muller*, 570 F.2d 1296, 1300-01 (5th Cir. 1978) (finding evidence sufficient to support an injunction because an associated person lied concerning opening of a bank account and supplied fictitious options trade statements). Actionable misrepresentations include those made to customers when soliciting their funds. *Rosenberg*, 85 F. Supp. 2d at 447-48; *Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 110-111 (2d Cir. 1986); *Hirk v. Agri-Research Council Inc.*, 561 F.2d 96, 103-104 (7th Cir. 1977). It is well established that, in light of the uncertainties of the marketplace, promises like those made by the Defendants, are inherently fraudulent. *R.J. Fitzgerald*, 310 F.3d at 1330; *Munnell v. Paine Webber Jackson Curtis* [1986-1987 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 23,313 at 32,863 (CFTC Oct.

8, 1986) (statements that an investor could conservatively expect a profit of 32% per year amount to a guarantee of profitability and are inherently fraudulent); *R&W Tech. Serv., Ltd. v. CFTC*, 205 F.3d 165, 170 (5th Cir. 2000) ("[P]etitioners also misrepresented the risk of futures trading by making bold predictions of high profits. Such claims amount[] to the type of guarantee of profit prohibited under Section 4b of the Act."); *CFTC v. Carnegie Trading Group, Ltd.*, 450 F. Supp. 2d 788, 799 (N.D. Ohio 2006) (finding that "representations made by [defendants] that customers could make large profits with minimal or no risk of loss in the context of futures trading were false because investments in futures transactions necessarily depend on speculative prediction and risk is unavoidable"); *CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1107 (C.D. Calif. 2003) ("by guaranteeing profits to investors, [defendant] made material misrepresentations that constitute fraud under [Section 4b] of the Act"); *CFTC v. First Capitol Futures Group*, Civ. Action No. 1:09-00488-CV-W-DW, 2010 U.S. Dist. LEXIS 49844, at *15, 2010 WL 1713617, at *6 (W.D. Mo. Feb. 18, 2010) ("Any guarantee of profit and assurance against loss in the context of futures trading is inherently a fraudulent misrepresentation because investments in futures transactions necessarily depend on speculative predictions about an unpredictable future and risk is unavoidable.") (quoting *CFTC v. Standard Forex, Inc.*, [1992-1994 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,063 at 41,462 (E.D.N.Y. Aug. 9, 1993)).

The D.C. Circuit has held that "recklessness is sufficient to satisfy section 4b's scienter requirement." *Drexel Burnham Lambert, Inc. v CFTC*, 850 F.2d 742, 748 (D.C. Cir. 1998) ("A reckless action . . . 'is one that departs so far from the standards of ordinary care that it is very difficult to believe the [actor] was not aware of what he was doing.'") (quoting *First Commodity Corp. v. CFTC*, 676 F.2d 1, 7 (1st Cir. 1982)). A statement is material if "a reasonable investor would consider it important in deciding whether to make an investment." *R.J. Fitzgerald*, 310

F.3d at 1328-29 (internal quotation omitted). Any fact that enables investors to assess independently the risk inherent in their investment and the likelihood of profit is a material fact. *In re Commodities Int'l Corp.*, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,943, at 44,563-64 (CFTC Jan. 14, 1997). In general, all manners of misrepresentations or omissions of fact regarding futures transactions that a reasonable person would consider important to his or her decision to invest — including profits, account balances, associated risks, commissions and fees — violate the antifraud provisions of the Act and Regulations. *See, e.g., Commonwealth Fin. Group, Inc.*, 874 F. Supp. 1345, 1352-54 (S.D. Fla. 1994); *CFTC v. AVCO Fin. Corp.*, 28 F. Supp. 2d 104, 115-16 (S.D.N.Y. 1998), *aff'd in part, rev'd in part and remanded in part on other grounds sub nom. CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000).

As described above, from at least June 18, 2008 through April 30, 2011, Defendants violated Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A) and (C) (2012), by: (1) promising prospective and actual customers that they would receive six (6) percent quarterly returns, plus a bonus payment at the end of the thirteen (13) month contract period; and, (2) representing to prospective and actual customers that there was little, if any, risk of losing their principal by contracting for it to be traded in off-exchange forex contracts on a leveraged or margined basis through the Coventry Eire Forex Fund. Bühler-Miko, both individually and as the agent of Coventry, intentionally or recklessly made the above misrepresentations of material fact with the requisite scienter because she knew that forex trading involves risk, she had no ability to control the inherent risks of trading forex, and that profits cannot be guaranteed. These misrepresentations were material in that reasonable customers would want to know that, with regard to forex trading, profits cannot be guaranteed and the risk of loss is always present and real.

D.  **Coventry Is Liable Under Section 2(a)(1)(B) of the Act for Violations of the Act Committed by Its Agent, Bühler-Miko**

Under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), a principle is liable for the acts of its agent when that agent is acting within the scope of his employment:

> The act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person.

Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012).

Throughout the relevant period, Bühler-Miko was an agent of Coventry and acted within the scope of her employment. She conducted the day-to-day business of Coventry, including conducting its forex trading operation and was the Executive Director, as well as, majority shareholder. In these roles, she was acting as an agent of Coventry within the scope of her employment when she fraudulently solicited customers by making false or misleading representations. Therefore, Coventry is liable for the acts of its agent pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012). *See Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966 (7th Cir. 1986); *Dohmen-Ramirez v. CFTC*, 837 F.2d 847, 857-58 (9th Cir. 1988).

## IV.   REMEDIES

Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), states in relevant part:

> (a) Whenever it shall appear to the Commission that any registered entity or other person has engaged in, is engaging in, or is about to engage in any act or practice constituting a violation of any provision of this Act or any rule, regulation or order, thereunder . . . the Commission may bring an action in the proper district court of the United States . . . to enjoin such action or practice, or to enforce compliance with this Act, or any rule, regulation or order thereunder…
>
> (d) . . . the Commission may seek and the court shall have jurisdiction to impose, on a proper showing, on any person found in the action to have committed any

violation . . . a civil penalty in the amount of not more than the greater of $100,000[2] or triple the monetary gain to the person for each violation . . . .

Here, pursuant to Section 6c of the Act, the Commission seeks: (a) a permanent injunction enjoining Coventry from committing further violations of the Act and from engaging in any commodity-related activity; and (b) a civil monetary penalty. To assess damages, the Court may hold a factual hearing or may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001). The Court finds that the imposition of a permanent injunction and a civil monetary penalty against Coventry is appropriate.

### A. Entry of Permanent Injunction and Trading Prohibition Against Coventry Is Appropriate

In an action for permanent injunctive relief, the Commission is not required to make a specific showing of irreparable injury or inadequacy of other remedies which private litigants must make. *SEC v. Levine*, 517 F. Supp. 2d 121, 147 (D.D.C. 2007); *CFTC v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978); *CFTC v. British Am. Commodity Options Corp.*, 560 F.2d 135, 141 (2d Cir. 1977), *cert. denied*, 438 U.S. 905 (1978); *United States v. Quadro Corp.*, 928 F. Supp. 688, 697 (E.D. Tex. 1996), *aff'd,* 127 F.3d 34 (5th Cir. 1997).

Rather, the Commission is entitled to injunctive relief upon a showing that a violation of the Act has occurred, and that "there is some reasonable likelihood of future violations." *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979), *cert. denied*, 442 U.S. 921 (1979); *GIGFX*, 844 F. Supp. at 64 (citing *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346-47 (11th Cir. 2008) (holding that the district court could enjoin defendants from engaging in "commodity-related activity" based on past conduct and potential for future violations of the CEA and CFTC

---

[2] For the time period at issue, the maximum CMP that may be ordered is $140,000 for each violation of the Act committed on or after October 23, 2008, or triple the monetary gain to the Defendant, whichever is higher. *See* Commission Regulation 143.8(a)(1)(iv), 17 C.F.R. § 143.8(a)(1)(iv) (2012).

Regulations)). While past misconduct does not lead necessarily to the conclusion that there is a likelihood of future misconduct, it is "highly suggestive of the likelihood of future violations." *SEC v. Aminex Resources Corp.*, No. 77-0493, 1977 WL 1038, at *2 (D.D.C. Sept. 12, 1977); *Hunt*, 591 F.2d at 1220; *see also CFTC v. Am. Metals Exch. Corp.*, 693 F. Supp. 168, 191 (D.N.J. 1988); *cf. SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981), *cert. denied*, 454 U.S. 1124 ("[T]he Commission is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of the present circumstances, betoken a 'reasonable likelihood' of future transgressions") (citations omitted); *CFTC v. Hunt*, 591 F.2d at 1219-20 (reversing district court's denial of injunctive relief, stating that it should not hesitate "to reverse an order denying [injunctive] relief when it is evident that the trial court's discretion has not been exercised to effectuate the manifest objectives of the specific legislation involved.").

Additionally, because enforcement proceedings under Section 6c involve public interest rather than a private controversy, the equitable jurisdiction of the district court is not to be denied or limited in the absence of a clear legislative command. *Hunt*, 591 F.2d at 1223 (citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)); *Kelly v. Carr*, 442 F. Supp. 346 (W.D. Mich. 1977), *aff'd in part and rev'd in part*, 691 F.2d 800 (6th Cir. 1980) (granting default judgment for permanent injunction); *SEC v. Falstaff Brewing Corp.*, No. 77-894, 1978 WL 1120, at *19 (D.D.C. Oct. 28, 1978) ("[t]he standards governing the issuance of an injunction sought by the government for the protection of the public are necessarily broad and free from the more restrictive concepts employed in private litigation"). In such a proceeding, the court's equitable powers are broader and more flexible than in private controversies. *Hunt*, 591 F.2d at 1223; *Falstaff*, 1978 WL 1120, at *19.

Pursuant to Section 6c of the Act, the Commission has demonstrated that Coventry, through the conduct set forth in the Complaint and declaration filed in this action, has engaged in acts and practices which (1) violated Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A) and (C) (2012), and (2) unless restrained and enjoined by this Court, there is a reasonable likelihood that Coventry will continue to engage in acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act. The nature of Coventry's fraudulent conduct warrants imposition of a permanent injunction against it to prevent further and future violations. Accordingly, Coventry is permanently restrained, enjoined and prohibited from engaging, directly or indirectly, in:

1. conduct that violates: Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A) and (C) (2012);

2. trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended by the CRA and Dodd-Frank Act, 7 U.S.C. § 1a (2012));

3. entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh) (2012)) ("commodity options"), security futures products, foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), or any swap (as that term is defined in Section 1a(47) of the Act and as further defined by Regulation 1.3(xxx) ("swap")), for their own personal account or for any account in which they may have a direct or indirect interest;

4. having any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps traded on their behalf;

5. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps;

6. soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps;

7. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and/or

8. acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2012)), agent or any other officer or employee of any person (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (2012)), registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012).

**B.  Civil Monetary Penalty**

Pursuant to Section 6c(d)(1) of the Act, courts may impose a civil penalty against any person, upon a proper showing, found to have violated the Act "in the amount of not more than the higher of $100,000 or triple the monetary gain to the person for each violation." 7 U.S.C. §

13a-1(d)(1) (2012). The Commission's regulations adjust the statutory civil monetary penalty of $100,000 for inflation. *See* 17 C.F.R. § 143.8 (2012). For the period at issue here, the Commission may seek a statutory civil monetary penalty of $140,000 per violation or triple the monetary gain (for violations committed on or after October 23, 2008), whichever is greater. *Id.*

The Court is free to fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent. *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999); *see also CFTC v. Hayes*, 2007 WL 858772, at *5 (E.D. Va. Mar. 13, 2007). "In determining how extensive the fine for violations of the Act ought to be, courts and the Commission have focused upon the nature of the violations." *Noble Wealth*, 90 F. Supp. 2d at 694. Conduct that violates the Act's core provisions should be considered very serious. *See JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995) (holding that "[c]onduct that violates the core provisions of the Act's regulatory system – such as manipulating prices or *defrauding customers should be considered very serious* even if there are mitigating facts and circumstances.") (internal quotations and citations omitted) (emphasis in original).

Here, Coventry, acting through its agent Bühler-Miko, defrauded customers, which is a core violation of the Act. There are no mitigating facts or circumstances. Defendants' deception of customers resulted in the blatant misrepresentation of future profits, and the fraudulent solicitation of at least $300,000 during the relevant period. Because of the gravity of the offense and the necessity of a deterrent, the Commission has requested that the Court order Coventry to pay a civil monetary penalty in the amount of $140,000, plus post-judgment interest ("CMP Obligation"). This amount represents a $140,000 civil monetary penalty for the one count solicitation fraud violation alleged in the Complaint. The Court finds that a serious sanction

should be imposed upon Coventry, and the Court orders Coventry to pay a civil monetary penalty of $140,000.

Coventry shall pay its CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

>    U.S. Commodity Futures Trading Commission
>    Division of Enforcement
>    ATTN: Accounts Receivables – AMZ 340
>    E-mail Box: 9-AMC-AMZ-AR-CFTC
>    DOT/FAA/MMAC
>    6500 S. MacArthur Blvd.
>    Oklahoma City, OK 73169
>    Telephone: (405) 954-5644

If payment by electronic funds transfer is chosen, Coventry shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Coventry shall accompany payment of the CMP Obligation with a cover letter that identifies the paying defendant and the name and docket number of this proceeding. Coventry shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

C.   **Provision Related to Monetary Sanctions**

**Satisfaction**: Upon full satisfaction of Coventry's CMP Obligation, a satisfaction of judgment will be entered into as to the Defendant.

**Partial Satisfaction**: Any acceptance by the Commission or Monitor of partial payment of Coventry's CMP Obligation shall not be deemed a waiver of its obligation to make further

payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## V. MISCELLANOUS PROVISIONS

**Equitable Relief**: The injunctive and equitable relief provisions of this Order shall be binding upon Coventry and upon any persons who are acting in the capacity of agent, officer, employee, servant, attorney, successor and/or assign of Coventry, and upon any person acting in active concert or participation with Coventry who receives actual notice of this Order by personal service or otherwise.

**Notices**: All notices required to be given to the Commission by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

> Director of Enforcement
> U.S. Commodity Futures Trading Commission
> Division of Enforcement
> Three Lafayette Centre
> 1155 21st Street, N.W.
> Washington, DC 20581

**Continuing Jurisdiction of this Court**: This Court shall retain jurisdiction of this case to assure compliance with this Order and for all other purposes related to this action.

## VI. CONCLUSION

Plaintiff, U.S. Commodity Futures Trading Commission's Motion for Entry of Final Judgment By Default against Defendant Coventry is GRANTED.

**SO ORDERED**, this 27th day of January, 2014, at Washington, District of Columbia.

_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE